**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TRACY SEGURA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-3450** |
| **LOUIS DEJOY, IN HIS OFFICIAL CAPACITY AS POSTMASTER GENERAL** | **SECTION "L" (3)** |

**ORDER AND REASONS**

Before the Court is Defendant's Motion for Summary Judgment, R. Doc. 28. Plaintiff filed an opposition, R. Doc. 41, to which Defendant filed a reply, R. Doc. 44. Plaintiff also filed a supplemental opposition. R. Doc. 49. Having considered the briefing and the applicable law, the Court now rules as follows.

## I. BACKGROUND

This case arises from alleged disability discrimination during Plaintiff Tracy Segura's employment with the United States Postal Service ("USPS"). R. Doc. 7 at 2. Plaintiff has worked for USPS since 1997 and is employed as a field recruiter in USPS's New Orleans office. *Id.* at 2-3. Plaintiff alleges that on December 23, 2019, a USPS employee whom she did not know, Darnell Hamilton, approached her as she was entering the office and asked her about "his money." *Id.* at 3. Plaintiff alleges that Hamilton, unsatisfied with Plaintiff's offer to refer him to someone to address any issues with his compensation, began screaming at her and refused to leave the building until she answered his questions. *Id.* at 4. Plaintiff further alleges that, though this incident took place in front of USPS security personnel, they did nothing to defend her. *Id.* Plaintiff alleges that Hamilton continued to accost her, following her into elevators and accusing her of lying to him. *Id.* at 4-5. Plaintiff further alleges that she began to call the police, at which

point USPS security personnel restrained Hamilton, who became even more aggressive after Plaintiff left the scene. *Id.* at 5. Plaintiff alleges that she was later informed that a USPS security officer had to draw his weapon against Hamilton. *Id.*

Plaintiff alleges that she reported the incident to the human resources manager and that she filed a claim for traumatic injury on December 24, 2019 by submitting a form to the human resources manager. *Id.* at 5-6. Plaintiff further alleges that she was informed that Hamilton was employed at USPS's Bywater location, had an outstanding warrant for his arrest, and had recently been released from a psychiatric facility. *Id.* Plaintiff avers that she feared for her safety after the incident. *Id.* Plaintiff alleges that USPS's failure to protect her compounded her fears, given that USPS security personnel did not arrest Hamilton or enact procedures to prevent him from approaching Plaintiff again and merely advised Plaintiff to take an alternate route to her car when exiting the building. *Id.*

Plaintiff avers that she sought medical treatment from a physician, who diagnosed her with post-traumatic stress disorder ("PTSD") on January 2, 2020. *Id.* at 7. Plaintiff alleges that her physician advised her to take medical leave from her position at USPS and that Plaintiff requested medical leave on January 3, 2020. *Id.* Plaintiff alleges that the acting human resources manager, Kristina Connelly, "maliciously undermine[d] every effort Plaintiff made to obtain approval for the care and medical leave" Plaintiff needed to recover from the incident. *Id.* Plaintiff alleges that Connelly falsely accused Plaintiff of improperly editing her incident report and tarnished Plaintiff's reputation by making this false claim to Plaintiff's colleagues. *Id.* at 8. Plaintiff further alleges that Connelly edited the factual record of the incident to undermine Plaintiff's claim for benefits. *Id.* Plaintiff alleges that Connelly continued to hinder Plaintiff's efforts to obtain medical treatment, including by refusing to timely provide a necessary form and

by scheduling a fact-finding interview for the purpose of potential disciplinary action against Plaintiff. *Id.* at 8-9. Plaintiff alleges that Connelly took other malicious actions, including falsely charging Plaintiff with being away without leave ("AWOL"), revoking Plaintiff's access to certain areas of the computer network, and further revising the injury report to undermine Plaintiff's claim for medical leave and benefits. *Id.* at 9-10.

Plaintiff alleges that she continues to live in fear of Hamilton. Plaintiff avers that she had to relive the ordeal by testifying at a June 17, 2020 arbitration hearing regarding Hamilton's termination from USPS. *Id.* at 10. Plaintiff further alleges that Hamilton later shot and killed his father and is now incarcerated, but that she fears he could be released on bond and harm her. *Id.* Plaintiff avers that USPS still has not taken measures to protect her or prevent Hamilton from accessing the office. *Id.* at 10-11.

Plaintiff claims USPS violated the Americans with Disabilities Act ("ADA") by denying her requests for reasonable accommodations for her PTSD and imposing adverse employment actions. *Id.* at 11-12. Plaintiff also brings a claim for intentional infliction of emotional distress, arguing that USPS's agents intentionally obstructed Plaintiff's recovery from the traumatic incident. *Id.* at 12-13. Plaintiff seeks damages for mental anguish, humiliation, and embarrassment; loss of reputation; loss of enjoyment of life; punitive damages; and attorney's fees and costs. *Id.* at 12.

Defendant's Answer admits that Plaintiff is employed by USPS; that Plaintiff encountered Hamilton, who was later detained, at its office on December 23, 2019; that Plaintiff reported the incident to the human resources manager; and that Plaintiff filed a traumatic injury claim. R. Doc. 18 at 2-4. However, Defendant generally denies Plaintiff's other allegations and causes of action. *Id.* at 5-6. Defendant asserts twenty affirmative defenses including: that the

Court lacks jurisdiction for Plaintiff's claims that do not arise under federal law; that sovereign immunity bars Plaintiff's claims; that USPS acted reasonably, in good faith, with due care, and without malice; that Plaintiff has failed to make a *prima facie* case of discrimination; and that Plaintiff was not a qualified individual with a disability. *Id.* at 7-9. Defendant also asserts that the only waiver of sovereign immunity for a cause of action for disability discrimination in federal employment is the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq*. *Id.* at 8.

## II. PRESENT MOTION

Defendant moves for summary judgment on all of Plaintiff's claims. R. Doc. 28. Defendant argues that Plaintiff cannot establish a *prima facie* case of disability discrimination because much of the alleged discrimination happened before Defendant had knowledge of Plaintiff's disability and Plaintiff cannot prove she suffered any adverse employment action. Defendant further argues that, even if Plaintiff can make a *prima facie* case of discrimination, she cannot prove that Defendant's nondiscriminatory explanations for its actions are a pretext for discrimination. Additionally, Defendant argues that Plaintiff's claim for intentional infliction of emotional distress is preempted by the Rehabilitation Act.

Plaintiff opposes the motion, arguing that genuine disputes of fact remain as to Plaintiff's disability discrimination claim. R. Doc. 41. Plaintiff asserts that her allegations are sufficient to make a *prima facie* case of discrimination, including that she suffered adverse employment actions. Plaintiff also argues that her claim for intentional infliction of emotional distress is not preempted because it is based on different facts than her disability discrimination claim.

## III. APPLICABLE LAW

### *a. Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

***b. Disability Discrimination Under the Rehabilitation Act***

***i. Applicability of the Rehabilitation Act***

Plaintiff initially brought her disability discrimination claim under the ADA. However, the ADA excludes claims against the federal government, so Plaintiff must instead bring her claims under the Rehabilitation Act. *Pinkerton v. Spellings*, 529 F.3d 513, 515 (5th Cir. 2008); *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003). The Rehabilitation Act provides that

> [n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). The Act defines "individual with a disability" as any individual who "(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services." 29 U.S.C. § 705(20)(A). Moreover, as defined in the Code of Federal Regulations, "[d]isability means, with respect to an individual—(i) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) [a] record of such an impairment; or (iii) [b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2.

***ii. Burden-Shifting Framework***

Courts evaluate discrimination claims under the Rehabilitation Act with the same standard used for ADA claims. *Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 399 (5th Cir. 2012). Accordingly, when a plaintiff's claim for disability discrimination is based on circumstantial evidence, it proceeds under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). This framework has three steps. First, the plaintiff must "establish a prima facie case of discrimination." *Id.* Second, the defendant "must articulate a legitimate,

nondiscriminatory reason" for its actions. *Id.* Third, "the burden shifts back to the [plaintiff] to show that [the defendant's] proffered reason is pretextual." *Id.*

To make a *prima facie* case of disability discrimination, a plaintiff must show that she was "(1) disabled within the meaning of the [Rehabilitation Act], (2) subjected to an adverse action 'solely by reason of her or his disability,' and (3) otherwise qualified for the program." *Duncan v. Univ. of Texas Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 (5th Cir. 2012). To show that she was subjected to an adverse employment action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). In other words, a disability discrimination claim should not be used merely to protect a plaintiff from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Next, whether a plaintiff is "otherwise qualified" depends on "whether (1) 'the individual could perform the essential functions of the job'; and, (2) if not, 'whether any reasonable accommodation by the employer would enable him to perform those functions.'" *Sapp v. Donohoe*, 539 F. App'x 590, 595 (5th Cir. 2013) (quoting *Chandler v. City of Dall.*, 2 F.3d 1385, 1393–94 (5th Cir. 1993)).

If the plaintiff has established a *prima facie* case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory explanation for the challenged action. The defendant's burden "is one of production, not persuasion . . . ." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). There is no "credibility assessment" in determining whether the defendant has met this burden; rather, the court simply inquires whether the defendant has

"introduce[d] evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original).

The burden then shifts back to the plaintiff to show that the defendant's proffered nondiscriminatory explanation is a pretext for discrimination. This requires the plaintiff to produce "substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination" and to "rebut each nondiscriminatory reason articulated by the employer." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). The plaintiff "may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

***iii. Preemption of Tort Claims***

Federal statutes, including the Rehabilitation Act, "provide[] the exclusive judicial remedy for claims of discrimination in federal employment," such that they "pre-empt[] the more general tort recovery statutes" of state law. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *see also Watkins v. Lujan*, 922 F.2d 261, 263 (5th Cir. 1991). A tort claim is preempted if it "relies on the same facts" as the claim brought under the federal discrimination statute. *Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992).

***c. Intentional Infliction of Emotional Distress***

To make a claim for intentional infliction of emotional distress ("IIED") under Louisiana law, a plaintiff must prove three elements:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Further, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Additionally, "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.* at 1210.

## IV. DISCUSSION

### *a. Disability Discrimination*

The Court must deny summary judgment on Plaintiff's disability discrimination claim. To make a claim for disability discrimination, Plaintiff must establish a *prima facie* case of discrimination; then, Defendant must offer nondiscriminatory explanations for its actions; and finally, Plaintiff must show that Defendant's explanations are a pretext for discrimination. *LHC Group*, 773 F.3d at 694. Plaintiff has made a *prima facie* case of discrimination. First, Plaintiff has alleged that she was disabled within the meaning of the Rehabilitation Act. Plaintiff has alleged that the initial incident caused her to suffer from PTSD and required her to take time off work, which is sufficient to constitute a "mental impairment" that "results in a substantial impediment to employment" and may require "vocational rehabilitation services." 29 U.S.C. § 705(20)(A). Plaintiff's alleged PTSD may also "substantially limit one or more of [Plaintiff's] major life activities." 29 C.F.R. § 1630.2. Thus, Plaintiff has alleged that she was disabled beginning immediately after her encounter with Hamilton left her traumatized. Contrary to Defendant's argument, there is no requirement that Plaintiff's disability be officially recorded or

apparent to others. *See* 29 C.F.R. § 1630.2 (using "or" to list the three ways a person may be considered disabled).

Second, Plaintiff has alleged that she was subjected to an adverse employment action because of her disability. Plaintiff must allege actions that were "materially adverse" such that they would have "dissuaded a reasonable worker from making . . . a charge of discrimination"—not merely "petty slights or minor annoyances." *Burlington*, 548 U.S. at 68. Some of the adverse actions Plaintiff alleges do not meet this standard—including a delay in receiving a form, the scheduling of a fact-finding interview, a temporary AWOL charge for which Plaintiff was not penalized, and alleged comments about Plaintiff exaggerating on her incident report, all of which would merely constitute "petty slights or minor annoyances." *Id.* However, two of the adverse actions Plaintiff alleges may have been materially adverse: the revocation of Plaintiff's access to computer programs that impaired her ability to do her job for several days, and the revisions to documentation of Plaintiff's disability that caused her workers' compensation payments to be interrupted for several months. These two alleged actions might have dissuaded a reasonable worker from making a charge of discrimination if they went beyond mere inconvenience and affected Plaintiff's ability to do her job and to receive workers' compensation. Plaintiff alleges that Defendant took these actions because of Plaintiff's attempts to report her disability and receive accommodations for it. Thus, Plaintiff has established a *prima facie* case of disability discrimination.[1]

Next, the burden shifts to Defendant to provide legitimate, nondiscriminatory reasons for these alleged adverse actions. However, instead of offering explanations for these two alleged

---

[1] The parties do not dispute the third element of Plaintiff's *prima facie* case, that Plaintiff was "otherwise qualified" for her job.

actions, Defendant denies that they happened or that they rise to the level of materially adverse actions. Regarding the alleged revocation of Plaintiff's access to computer programs, Defendant argues that any interruption of Plaintiff's access was a mere inconvenience that slightly altered her job duties while her access was being restored, and that a reasonable employee would not have found this action materially adverse. Regarding the alleged revisions to Plaintiff's disability documentation that led to a months-long interruption of her workers' compensation payments, Defendant argues that Plaintiff has no evidence that the forms were improperly edited or that any changes affected Plaintiff's workers' compensation payments.

The Court cannot treat these arguments as legitimate, nondiscriminatory reasons for Defendant's alleged actions as the burden-shifting framework requires. At this step of the analysis, the Court may not make "credibility determinations," but must simply determine whether Defendant has "introduce[d] evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's*, 509 U.S. at 509. However, evaluating Defendant's arguments that these actions did not happen or were not materially adverse would require credibility determinations. The Court cannot simply take these arguments as true because there remain genuine disputes as to whether these actions occurred and, if so, how they affected Plaintiff. Therefore, the Court cannot grant Defendant summary judgment on Plaintiff's disability discrimination claim.

***b. Intentional Infliction of Emotional Distress***

The Court has no choice but to grant summary judgment on Plaintiff's claim for intentional infliction of emotional distress. The parties dispute whether this claim relies on the same facts as Plaintiff's claim for disability discrimination and is thus preempted by the Rehabilitation Act. Regardless, Plaintiff's allegations do not satisfy the elements of an IIED

claim. Plaintiff must show that Defendant's conduct was "extreme and outrageous"; that Plaintiff suffered "severe" emotional distress; and that Defendant "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result" from its conduct. *White*, 585 So. 2d at 1209. Additionally, Plaintiff must show that Defendant's conduct was "so outrageous in character . . . as to go beyond all possible bounds of decency" and was "intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, [or] worry . . . ." *Id.* at 1209-10. Plaintiff has not alleged actions by Defendant that demonstrate an intent to cause her severe emotional distress. Plaintiff's opposition asserts that her IIED claim is based on the failure of Defendant's security personnel to protect Plaintiff from Hamilton. However, Plaintiff does not allege that the security officers refused to respond to the incident, but simply that they did not respond quickly enough. This does not indicate an intent to cause Plaintiff severe emotional distress, nor that Defendant's actions were "so outrageous . . . as to go beyond all possible bounds of decency". Thus, Plaintiff's IIED claim must fail.[2]

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Plaintiff's claim for intentional infliction of emotional distress but denied as to Plaintiff's claim for disability discrimination under the Rehabilitation Act.

[2] Though Plaintiff additionally asserts a claim for negligent infliction of emotional distress ("NIED") in her opposition to this motion, Plaintiff did not assert an NIED claim in her Complaint or Amended Complaint and thus did not plead such a claim.

New Orleans, Louisiana, this 12th day of April, 2022.

UNITED STATES DISTRICT JUDGE